# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,
 Plaintiff,

vs.                     No. 09-cr-2621 JAP

**MIGUEL COLLAZO**,
 Defendant.

## MEMORANDUM ORDER AND OPINION

   Currently, Defendant Miguel Collazo (Defendant) is serving an 84-month sentence for Possession with Intent to Distribute 50 Grams and More of Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). On November 26, 2019, Defendant filed a SEALED MOTION TO REDUCE SENTENCE PURSUANT TO DRUG GUIDELINE AMENDMENT (Doc. 38) (Motion). In his Motion, Defendant asks that his sentence be reduced in accordance with a retroactive amendment to the United States Sentencing Commission Guidelines Manual (Guidelines). On December 11, 2019, the United States Probation Office (Probation) filed a MEMORANDUM (Doc. 40) (Memo), which provided the Court with a retroactive sentence review of Defendant's time in custody. On December 13, 2019, Plaintiff United States of America (Government) responded in UNITED STATES' RESPONSE TO SEALED MOTION TO REDUCE SENTENCE PURSUANT TO DRUG GUIDELINE AMENDMENT (Doc. 42). While the Government agrees that Defendant meets the eligibility requirements for sentence modification, the Government contends that Guidelines policy and the 18 U.S.C. § 3553(a) sentencing factors preclude Defendant from obtaining relief. After reviewing the briefs and the Memo, the Court finds that Defendant is eligible under the Guidelines and that the § 3553(a)

factors favor modification of his sentence. Therefore, the Court will grant Defendant's Motion and will impose a new sentence of 68 months incarceration.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are uncontested. On September 9, 2009, a grand jury indicted Defendant for Possession with Intent to Distribute 50 Grams and More of Methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). Indictment (Doc. 2). On September 27, 2012, Defendant and the Government entered into a Federal Rule of Criminal Procedure (Rule ) 11(c)(1)(C) Plea Agreement (Agreement). Agreement (Doc. 27). The Agreement stipulated to an 84-month sentence. *Id.* ¶ 10a.

The stipulated sentence was 50 percent lower than the bottom of the Guidelines range and below the 10-year statutory minimum for Defendant's offense. *See* Memo (Doc. 40) at 1. Under the Guidelines, Defendant had a criminal history category of III.[1] *Id.* Based on Defendant's actual conduct of possessing 595.1 grams of methamphetamine, Defendant's offense level was 36. *Id.* After a three-level adjustment for acceptance of responsibility, Defendant's total offense level was 33. *Id.* Defendant did not qualify for additional reductions under the safety valve provision. *Id.* A criminal history category of III combined with an offense level of 33 resulted in a 2012 Guidelines range of 168 to 210 custodial months. *Id.* Because of Defendant's substantial assistance to authorities, the Government filed a sealed motion under 18 U.S.C. § 3553(e) requesting a departure from the statutory mandatory minimum sentence of 10 years. *See* Sealed Motion for Departure from Statutory Minimum Mandatory Sentence (Doc. 34).

---

[1] On one occasion in his brief, Defendant asserts that his criminal history category was I. *See* Motion (Doc. 36) at 2-3. However, he abandons that assertion elsewhere and uses a criminal history category of III. *Id.* at 1, 4. Because the reference to criminal history category I appears to be a typo, the Court will assume that Defendant does not contest that his criminal history category was III.

On February 21, 2013, after considering all relevant factors, the Court accepted the parties' Rule 11(c)(1)(C) Agreement and sentenced Defendant to 84-months of imprisonment. *See* Judgment (Doc. 37).

On September 6, 2014, Defendant escaped from a minimum-security satellite camp at the Taft Correctional Institution in California. Memo (Doc. 40) at 3.

For three years, Defendant was a fugitive. *Id.* On October 21, 2017, the Los Angeles County Police arrested him for providing false information and false identification to law enforcement officers. *Id.* Subsequently, Defendant was arrested on a federal warrant and returned to BOP custody. *Id.* There, he received a disciplinary report for escape, and he lost good time credits. *Id.*

On October 24, 2017, in the United States District Court, Eastern District of California, the Government charged Defendant by criminal complaint with Escape. *Id.* On November 29, 2017, the Government successfully moved to drop the charges. *Id.*

Defendant is now incarcerated at Beaumont Low FCI, Texas. Memo (Doc. 40) at 2. Currently Defendant is eligible for release on April 10, 2021. *Id.* On December 2, 2019, Defendant requested permission to be relocated to the Central District of California when released from custody. *Id.* at 3.

## APPLICABLE LAW

After the Court sentenced Defendant, retroactive Guidelines Amendment 782 lowered the base offense level for certain drug crimes. U.S. Sentencing Guidelines Manual app. C supp. amend 782, amend. 788 (U.S. Sentencing Comm'n 2016); *see also United States v. Green*, 886 F.3d 1300, 1303 (10th Cir. 2018). A reduction in a Guidelines base offense level results in a

lower Guideline penalty range. *See United States v. Kurtz*, 819 F.3d 1230, 1234 (10th Cir. 2016). Defendant seeks a modification of his sentence based on the now applicable lower range.

"A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so." *United States v. Blackwell*, 81 F.3d 945, 947 (10th Cir. 1996). Under § 3582(c)(2), a Court may modify a sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)."

The Tenth Circuit has explained that there are three prongs a defendant must meet to qualify for a sentence modification under 3582(c)(2). *United States v. C.D.*, 848 F.3d 1286, 1289 (10th Cir. 2017). First, "the defendant must show he was sentenced *based on* a guideline range the Sentencing Commission lowered subsequent to defendant's sentencing." *Id.* (emphasis added). A defendant's sentence will be based on a Guideline range "so long as that range was part of the framework the district court relied on in imposing the sentence or accepting the agreement." *Hughes v. United States*, 138 S. Ct. 1765, 1775 (2018) (holding that a Rule 11(c)(1)(C) agreement does not bar a defendant from relief under 3582(c)(2)).

Second, a defendant must show that "his request for a sentence reduction is *consistent with* the Commission's policy statements." *C.D.*, 848 F.3d at 1289 (emphasis added). The policy statement regarding reduction of a sentence because of an amended Guidelines range is found in U.S.S.G. § 1B1.10 (Policy). This section prohibits reduction if the amendments are inapplicable to the defendant or if the amendment does not actually lower the defendant's Guidelines range. The "application notes to the policy statement give shape to the court's discretion" and state that the court "'shall consider' the factors in § 3553 and the nature and seriousness of any threat to

4

public safety in determining whether a reduction is warranted." *United States v. Osborn*, 679 F.3d 1193, 1195 (10th Cir. 2012) (quoting § 1B1.10 cmt. n.1(B)).

The second and third prongs overlap as the third prong instructs that "defendant must convince the district court he is *entitled to* relief in light of the applicable sentencing factors found in 18 U.S.C. § 3553(a)." *C.D.*, 848 F.3d at 1289. A defendant's eligibility for sentencing reduction does not give him an absolute right to reduction. *Osborn*, 679 F.3d at 1195-96; *see also Dillon v. United States*, 560 U.S. 817, 826 (2010). As delineated in the Guidelines Policy Statement, a court may also review a defendant's entitlement to relief based on his post-sentencing conduct. §1B1.10 cmt. n1(B).

## ANALYSIS

The parties agree that Defendant is eligible for a sentence modification. Although the Agreement stipulated to an 84-month sentence under Rule 11(c)(1)(C), the Court evaluated the proposed 84-month sentence after considering the applicable Guidelines range. Because the Court exercised its sentencing discretion within the Guidelines framework, Defendant meets the § 3582(c)(2) eligibility requirement.

The parties also concur that the recent Guidelines amendment effectively lowered the penalties for Defendant's offense. Using the 2018 Guidelines,[2] Probation calculated that Defendant's new offense level is 31, and with a criminal history category of III, this results in a Guidelines range of 135 to 168 months. Under § 1B1.10(b)(2)(B), when determining a new sentence, a court should apply a reduction comparable to any at the original sentencing. Defendant's original sentence was based on a 50 percent reduction to the lower end of the 2012 applicable range of 168-210 months. A 50 percent reduction to the new range would result in a

---

[2] The parties do not dispute that the 2018 Guidelines apply.

range of 68 to 84 months. Because Defendant was sentenced at the bottom of the Guidelines range, Probation suggests that a 68-month sentence is appropriate. Memo (Doc. 40) at 2.

Defendant argues that Probation used the wrong offense level. According to Defendant, his imposed 84-month custodial sentence arose from an agreement to apply a seven-level reduction to Defendant's original offense level of 33, resulting in an offense level of 26 and a Guidelines range of 78 to 97 months. Motion (Doc. 38) ¶ 6. The 84-month sentence was within that range. *Id.* Defendant asks the Court to apply a 2-level offense reduction to offense level 24, which results in a Guidelines range of 63-73 months and requests modification accordingly. *Id.*

Defendant's calculation is a misapplication of the Guidelines. When a court modifies a defendant's sentence based on a reduction in Guidelines sentencing ranges, the court must begin by determining the "amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced." § 1B1.10(b)(1); *see also Dillon*, 560 U.S. at 827. "In making such determination, the court shall substitute only the [retroactive amendments] for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." § 1B1.10(b)(1); *see also Dillon*, 560 U.S. at 827  Offense levels for drug charges are based on drug quantities. *See* U.S.S.G. § 2D1.1. When determining a new sentence, "district courts cannot recalculate aspects of a sentence that are unaffected by a retroactively applicable amendment." *United States v. Washington*, 759 F.3d 1175, 1182 (10th Cir. 2014). Therefore, any new calculation begins with the previously determined criminal history category and with the drug quantities established in the original proceeding. *See id.*

In his agreement, Defendant admitted to possession with intent to distribute 595.1 grams of actual methamphetamine. Under the 2012 Guidelines, his offense level for that quantity of methamphetamine was 36. Under the retroactive amendments as applied and based on the same actual quantity of methamphetamine, Defendant's 2018 offense level drops two-levels from 36 to 34. After a 3-level adjustment for acceptance of responsibility, Defendant's new offense level is 31. Probation correctly calculated the applicable modification.

Although the Government does not dispute Defendant's eligibility and agrees with Probation's calculation of the new Guidelines range, the Government urges the Court to deny Defendant's Motion. The Government asserts that Defendant's prison escape bars him from relief. The escape, the Government reasons, means that Defendant cannot show that a modification would be consistent with the Policy or that he is entitled to a modification under the § 3553(a) factors.

The Government's argument does not focus on the text of the Policy but on the application notes. When assessing whether to grant a sentence modification, the application notes to § 1B1.10 require the Court to consider the 3553(a) factors, public safety, and a defendant's post-sentencing conduct. § 1B1.10 cmt. n.1(B)(i)-(iii). According to the Government, the Court should give Defendant's post-sentencing conduct the most weight, because his escape shows Defendant's incarceration has not deterred him and suggests Defendant might offend further.

The Tenth Circuit has found that prison disciplinary reports may be a significant factor in determining whether sentence modification is appropriate. *See Osborn*, 679 F.3d at 1196 (affirming a district court that denied a § 3552(c)(2) motion based, in part, on prison disciplinary reports); *see also United States v. Ringer*, 350 F. App'x. 210 (10th Cir. 2009) (unpublished) (holding that the district court did not abuse its discretion when it considered the defendant's

In his agreement, Defendant admitted to possession with intent to distribute 595.1 grams of actual methamphetamine. Under the 2012 Guidelines, his offense level for that quantity of methamphetamine was 36. Under the retroactive amendments as applied and based on the same actual quantity of methamphetamine, Defendant's 2018 offense level drops two-levels from 36 to 34. After a 3-level adjustment for acceptance of responsibility, Defendant's new offense level is 31. Probation correctly calculated the applicable modification.

Although the Government does not dispute Defendant's eligibility and agrees with Probation's calculation of the new Guidelines range, the Government urges the Court to deny Defendant's Motion. The Government asserts that Defendant's prison escape bars him from relief. The escape, the Government reasons, means that Defendant cannot show that a modification would be consistent with the Policy or that he is entitled to a modification under the § 3553(a) factors.

The Government's argument does not focus on the text of the Policy but on the application notes. When assessing whether to grant a sentence modification, the application notes to § 1B1.10 require the Court to consider the 3553(a) factors, public safety, and a defendant's post-sentencing conduct. § 1B1.10 cmt. n.1(B)(i)-(iii). According to the Government, the Court should give Defendant's post-sentencing conduct the most weight, because his escape shows Defendant's incarceration has not deterred him and suggests Defendant might offend further.

The Tenth Circuit has found that prison disciplinary reports may be a significant factor in determining whether sentence modification is appropriate. *See Osborn*, 679 F.3d at 1196 (affirming a district court that denied a § 3552(c)(2) motion based, in part, on prison disciplinary reports); *see also United States v. Ringer*, 350 F. App'x. 210 (10th Cir. 2009) (unpublished) (holding that the district court did not abuse its discretion when it considered the defendant's

prison disciplinary reports in deciding not to modify Defendant's sentence). While *Osborn* and *Ringer* set a standard; it is a high one. In both cases, the defendants had more than one disciplinary offense. *See Osborn*, 679 F.3d at 1195 (defendant cited for two disciplinary infractions and the offense conduct included firearms on multiple occasions); *Ringer*, 350 F. App'x at 212 (defendant's disciplinary history included "two assaults, five occurrences of possessing a controlled substance, possession of a dangerous weapon, two episodes of setting fires, and two misconducts for fighting"). In contrast, Defendant's non-violent escape is his only listed infraction. Moreover, a prison disciplinary report alone does not bar a defendant from relief but is a single factor. *See* § 1B1.10, cmt. n.1(B)(iii) (The court *may* consider post-sentencing conduct of the defendant . . . ." (emphasis added)); *see also United States v. Meridyth*, 701 F. App'x. 722, 725 (10th Cir. 2017) (unpublished) ("No legal authority requires the court to assign a certain weight to a defendant's conduct in prison.").

Notably, despite the Government's emphasis on the seriousness of Defendant's escape, it moved to dismiss the criminal complaint predicated on that escape. When the Court asked the Government for the motive behind its decision not to prosecute Defendant, the Government offered no substantive reason.[3] The Government's choice not to pursue federal charges against Defendant undermine its contention that the escape alone is enough to block Defendant from relief.

The Court observes that while it certainly does not condone a prison escape and the escape is a factor in the Court's determination, there are additional factors to which it gives

---

[3] On January 17, 2020, the Court sent a letter copied to both parties, stating that "[i]t would be helpful to the Court to know why the Government moved to dismiss the escape charge approximately a month after it was filed." The Government responded, stating "The criminal complaint was filed and was the basis for an E911 Location Data warrant to determine the defendant's location and execute the arrest warrant. Once the defendant was returned to custody, the criminal complaint was dismissed."

weight. There is no evidence that the escape resulted in any physical damage to individuals or properties. Other than using false papers while a fugitive, Defendant does not appear to have committed further crimes. Defendant has never been charged with an act of violence, and his prior convictions include only minor offenses.[4] Memo (Doc. 40) at 2.

Section 3553(a) lists factors a court should consider when imposing a sentence or a modification. These factors include among other things: "the nature and circumstances of the offense," "the history and characteristics of the defendant," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." § 3553(a). Here again, the Government focuses on the Defendant's escape, stating that it prevents Defendant from demonstrating his entitlement to a sentence modification. But the Government does not further substantiate these claims.

In contrast, Defendant offers substantial evidence that his time in prison has rehabilitated him. Attached to Defendant's Motion is a letter from the Defendant dated October 15, 2019 (Letter) (Doc. 38-1). In the Letter, Defendant admits his culpability and avers that after going through a drug and alcohol treatment program, he has changed. *Id.* at 4. He attributes his escape from camp as a lapse in judgment based on irrational thinking; a problem he has worked on in a prison drug abuse program. *Id.* The Memo reports that while in custody Defendant earned his GED and took classes on resume writing, nutrition, dress for success, time management, job interviewing, parenting and basic electrical/wiring. Memo (Doc. 40) at 3. Letters from friends

---

[4] The prior adult convictions include: Disorderly Conduct (2009), Carry Loaded Firearm Public Place (2010),and No Driver's License (2010). Defendant also had two arrests but no convictions for Possession of Marijuana (2010 and 2012). Memo (Doc. 40) at 2.

and family attest to Defendant's character and indicate their intended support of Defendant when he leaves custody.[5]

The Court concludes that the Defendant has shown that he meets the eligibility requirements of § 3582(c)(2), that a sentence modification is consistent with Policy, and that the § 3553(a) factors favor modification of Defendant's sentence. Accordingly, the Court will modify Defendant's custodial 84-month sentence to the time Defendant has already served, or 68-months, whichever is greater.

IT IS ORDERED that:

Defendant's custodial sentence is modified to the time Defendant has already served, or 68-months, whichever is greater.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] Attached to Defendant's motion are the following: a letter dated November 15, 2019, from Defendant's father, Miguel A. Villegas; a letter dated November 3, 2019, from Marie Villegas, Defendant's stepmother; a letter dated November 3, 2019, from Mark Villegas, Defendant's brother, a letter dated November 20, 2019, from Jorge Collazo, Defendant's brother, a letter dated November 22, 2019, from Rosa Villegas, Defendant's sister; and a letter dated October 15, 2019, from Robert Christenson, the boyfriend of Defendant's sister.